1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARLENE MARIE ALVA,                    No.  2:19-cv-00086 CKD

12              Plaintiff,

13        v.                               ORDER &

14   ANDREW SAUL, Commissioner of Social   FINDINGS AND RECOMMENDATIONS
     Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for disability benefits under Title II of the Social

20   Security Act ("Act").  For the reasons discussed below, the undersigned will recommend that

21   plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for

22   summary judgment be granted.

23   BACKGROUND

24        Plaintiff, born in 1974, filed a Title II application on December 1, 2015 for disability and

25   disability insurance benefits, alleging disability beginning December 15, 2010.  Administrative

26   Transcript ("AT") 15, 23.  Plaintiff alleged she was unable to work due to depression, anxiety,

27   numbness, tingling pain from knuckles to elbows, loss of strength in hands and arms, limited

28   range of motion, inability to write or open or close hand fully.  AT 84-85.  In a decision dated

April 4, 2018, the ALJ determined that plaintiff was not disabled.[1]  AT 15-24.  The ALJ made

the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity during the period from her alleged onset date of December 15, 2010 through her date last insured of March 31, 2016.
>
> 3.  Through the date last insured, had the following severe impairments: history of left finger fusion, history of right elbow surgery, carpal tunnel syndrome, epicondylitis, and obesity.
>
> 4. Though the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

5. Through the date last insured, the claimant had the residual functional capacity to perform light work except: she could have frequently fingered and felt with the bilateral upper extremities; and she could have occasionally handled, grasped, and twisted with the dominant right upper extremity.

6. The claimant was unable to perform her past relevant work.

7. Jobs existed in significant numbers that the claimant could have performed.

8. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 15, 2010, the alleged onset date, through March 31, 2016, the date last insured.

AT 17-24.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in finding that plaintiff did not have severe mental impairment; and (2) the ALJ erred in rejecting the opinion of a treating physician.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not

affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinions

Plaintiff asserts that the ALJ erred in rejecting the opinion of physician Dr. Vinay Reddy, who completed an Upper Extremity Assessment in September 2017.[2] See AT 914-918 (Dr. Reddy's September 21, 2017 report). At the October 2017 hearing on her disability claim, plaintiff testified that she had "constant pain in my arms and hands" that was not relieved by medication or 2012 surgery on her right elbow, and that limited her ability to use her hands and fingers for activities like zipping, buttoning, tying, and twisting the lids off containers. AT 43-49; see AT 19 (ALJ's summary of plaintiff's testimony).

The ALJ's decision addressed Dr. Reddy's report as follows:

> Vinay Reddy, M.D., the claimant's provider at Spine and Nerve Diagnostic Center, completed an opinion dated September 21, 2017 and stated that the claimant could never/rarely engage in fine manipulations, gross manipulations, reaching, or pushing/pulling; she could rarely lift/carry 10 pounds; her symptoms would likely increase if she were to work; her symptoms would frequently to constantly interfere with her attention and concentration; she would need unscheduled 10- to 15-minute breaks every 15 to 30 minutes; and she would be absent from work more than 3 times per month.[3]
>
> Although Dr. Reddy has treated the claimant, I give her opinion little weight. At the outset, Dr. Reddy's opinion is speculative, as she only began to treat the claimant as of July 18, 2013[4], yet she opined upon

---

[2] As noted above, the relevant period of alleged disability is from December 15, 2010 to March 31, 2016. AT 17.

[3] Citing AT 914-918.

[4] Citing AT 740-742 (July 18, 2013 new patient consultation with Dr. Reddy where plaintiff presented with right elbow, forearm, and hand pain).

4

the claimant's condition two years and seven months before she began to treat the claimant.

Furthermore, Dr. Reddy's opinion has issues with supportability and consistency with the record. While Dr. Reddy cited to her clinical findings, she also cited to positive "NCS bilaterally" findings and positive "Xrays."[5] However, prior to the date that the claimant was last insured, Dr. Reddy's progress notes describe the claimant's electrodiagnostic studies as being 'normal.'[6] Furthermore, the wrist x-rays documented prior to the date that the claimant was last insured showed normal findings.[7]

Dr. Reddy's opinion also is inconsistent with material evidence. Stephen Hankins, M.D., the claimant's provider at Sutter Health who recommended her elbow lateral release procedure[8] noted that the claimant had postoperative symptoms, yet she did well following surgery[9], she achieved nearly full range of motion with no neurological deficits[10], and her bilateral forearm pain was of an 'uncertain etiology.'[11] In fact, Dr. Reddy's opinion is not entirely consistent with and neglects to mention the claimant's hand therapist's November 25, 2013 statement that the claimant was not 'faithfully' attending hand therapy.[12]

Accordingly, I give little weight to Dr. Reddy's opinion.

AT 22.

---

[5] Citing AT 914.

[6] Citing AT 740 (noting that June 2013 electrodiagnostic studies of upper extremities performed by Dr. Reddy showed normal results).

[7] Citing AT 733-734 (January 2011 diagnostic imaging report showing "unremarkable" results for plaintiff's right wrist).

[8] Citing AT 375 (Dr. Hankins' July 2012 recommendation of elbow surgery).

[9] Citing AT 376 (Dr. Hankins' October 2012 note that plaintiff was "doing reasonably well" after surgery and had "nearly full digital flexion and extension").

[10] Citing AT 376, 394 (Dr. Hankins' November 2012 note that plaintiff "does not feel any significant improvement compared with her symptoms prior to surgery. On examination she has nearly full range of motion, no neurological deficits.").

[11] Citing AT 506 (Dr. Hankins' April 2014 note that plaintiff continued to present with bilateral forearm pain, claimed surgery had not provided "any benefit whatsoever," and on exam had full range of motion and positive radial tunnel tenderness. Dr. Hankins noted "bilateral forearm pain of uncertain etiology").

[12] Citing AT 501 (November 2013 medical note).

5

In contrast, the ALJ credited the opinion of State agency reviewing physician Dr. Nancy Armstrong, who concluded in a March 2016 assessment that plaintiff "could perform light exertional work; she could frequently handle and finger on the right; she is unable to forcefully grip on the right; and she could frequently feel with the bilateral upper extremities." AT 21, citing AT 78-81 (opining that plaintiff "had complaints of hand/arm pain, with minimal findings. The marked alleged functional limitations are not supported by her impairment and are only partially credible at most.").

The ALJ similarly credited the opinion of State agency reviewing physician Dr. H. Bronstein, who concluded in a June 2016 assessment that plaintiff "could perform light exertional work; she could frequently handle and finger on the right; she could occasionally engage in strong gripping on the right; she could frequently feel bilaterally; and she must avoid all exposure to hazards, including unprotected heights." AT 21, citing AT 88-91.

The ALJ found Dr. Armstrong's and Dr. Bronstein's opinions "consistent with the discussed treatment evidence that reflects normal EMG testing and normal radiographic studies of the wrists, in addition to providing reasonable restrictions when considering the claimant's surgery for epicondylitis."[13] AT 21. The ALJ found that these opinions also provided reasonable restrictions based on plaintiff's obesity and treatment history. AT 21.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to

---

[13] "Lateral epicondylitis, commonly known as 'tennis elbow,' is a painful condition involving the tendons that attach to the bone on the outside (lateral) part of the elbow. . . . This can lead to pain associated with activities in which this muscle is active, such as lifting, gripping and/or grasping. Sports such as tennis are commonly associated with this, but the problem can occur with many different activities." American Society for Surgery of the Hand, https://handcare.assh.org/Anatomy /Details-Page/ArticleID/27941/Tennis-Elbow-Lateral-Epicondylitis (last accessed January 16, 2020).

considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff asserts that the ALJ did not provide legitimate reasons, supported by the record, to discount Dr. Reddy's 2017 opinion. She argues that, contrary to the ALJ's analysis, Dr. Reddy's report was consistent with treatment notes indicating tenderness in plaintiff's right forearm and elbow, and pain on internal rotation of her right arm and wrist. See e.g., AT 744, 746, 749-750, 752-753, 756-757, 760, 763. However, insofar as these treatment notes were based on plaintiff's subjective symptoms, the ALJ found these not fully credible in an unchallenged finding. AT 21; see AT 19-20 (discussing medical evidence of hand and arm issues).

Moreover, Dr. Reddy's work status designation of plaintiff as "temporarily totally disabled" for part of 2013 and most of 2014, in part due to a diagnosis of depression[14], are inconsistent with multiple normal exam findings during the alleged period of disability and evidence of improvement, as noted by the ALJ.

> For example, progress notes often show physical examination
> findings including full upper extremity range of motion with no

---

[14] AT 742, 750, 755, 768, 771.

edema or atrophy, 4/5 to 5/5 strength, and intact sensation despite forearm tenderness and mixed findings of positive and negative Tinel's and Phalen's signs. . . . By July 10, 2013, progress notes state that the claimant was using a TENS unit with 'good benefit.'[15] In fact, the claimant's progress notes repeatedly state that the claimant was released to '[r]egular duty' and '[f]ull duty' work.[16]

AT 20; see generally AT 315-512.

Plaintiff cites post-surgical treatment notes showing that she continued to report disabling pain and impaired function in her arms and hands. See, e.g., AT 795 ("The patient continues to feel that [their] hand [sic] are tired. She reports that she can not peel an orange. She can not do any gripping due to her pain. . . . [S]he continues to have difficulty using her arms."). However, these subjective complaints implicate the ALJ's unchallenged negative credibility finding. See Gertsch v. Colvin, 589 Fed. App'x 381 (9th Cir. 2015) (unpublished) ("The ALJ rejected [claimant's] subjective complaints as not credible, a finding that [claimant] does not challenge on appeal and has therefore waived."), citing Avenetti v. Barnhart, 456 F.3d 1122, 1125 (9th Cir. 2006).

Finally, the ALJ properly discounted Dr. Reddy's opinion as to plaintiff's condition in the years prior to July 2013, when Dr. Reddy began treating her. See Meanel v. Apfel, 172 F.3d at 1113 (treating physician's conclusory, minimally supported opinion rejected). The undersigned concludes that the ALJ supplied specific and legitimate reasons, supported by substantial evidence, for discounting the opinion of treating physician Dr. Reddy.

B. Severe Mental Impairment

Plaintiff asserts that the ALJ erred by not finding her depression a severe impairment at step two of the sequential evaluation.

At step two, ALJ found plaintiff to have multiple severe physical impairments. AT 17. Though the ALJ discussed plaintiff's diagnoses and complaints of depression (AT 17), he found her mental impairments to be non-severe for the following reasons:

---

[15] AT 337.

[16] AT 318, 321, 323, 326, 328, 332, 334.

8

When considering the factors in Social Security Ruling 16-3p, the claimant's allegations are not entirely consistent with the evidence. For example, progress notes . . . often show generally normal mental status findings[.][17]  While the claimant's providers have described her reported symptoms as being moderate to severe, progress notes show that the claimant reported improvement with her anxiety [on medication] by August 5, 2015.[18]  By December 4, 2015, . . . her provider stated that her anxiety 'has been appropriately managed.'[19]

. . .

The claimant completed a Function Report; however, she largely attributed her limitations to her physical condition rather than to any psychiatric symptoms.[20] . . . Furthermore, when the claimant [was] treated at Mercy Medical Group, her mental status examination findings have been normal with the exception that she has presented with the anxious affect.[21]

AT 18.

The ALJ also gave "great weight" to the opinion of State agency reviewing psychiatrist Dr. L. Colsky, who opined in March 2016 that plaintiff did not have a severe mental impairment. AT 18; see AT 72-82.  Dr. Colsky concluded that plaintiff's alleged mental limitations were not "substantiated by the objective medical evidence" and were only partially consistent with the total medical evidence.  AT 78.  The ALJ concluded that plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.  AT 18.

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding,

---

[17] Citing AT 846-912.

[18] Citing AT 883.

[19] Citing AT 882.

[20] Citing AT 212-225 (February 2016 report).

[21] Citing AT 846-912.

carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

As the Ninth Circuit explained in Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017), "Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." (Internal quotes and citations omitted.)

Here, the RFC included no mental limitations. The vocational expert (VE) testified that plaintiff had previously worked as a telephone solicitor, administrative clerk, salad counter attendant, and cashier. AT 65-66. The VE next testified that someone with plaintiff's RFC could perform unskilled work as an investigator, school bus monitor, or usher. AT 67-68.

Notably, despite the absence of mental limitations in the RFC, the ALJ questioned the VE about unskilled jobs for someone with plaintiff's physical limitations, and those available jobs were the basis of the ALJ's finding of nondisability. AT 24. Unskilled work requires "little to no

judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).

Plaintiff has not shown that she had greater mental limitations than the mild variety found by the ALJ, a finding supported by Dr. Colsky's opinion and other cited evidence, including normal mental status findings and plaintiff's emphasis on physical limitations in her Function Report. Mild mental impairment is generally consistent with unskilled work. See Caldera v. Astrue, 2010 WL 2991484 (C.D. Cal. July 27, 2010) ("Nor has Caldera shown any inconsistency between a mild mental impairment and her ability to perform simple, unskilled work activities at step five of the sequential analysis."). Thus, given that plaintiff was found nondisabled based on her ability to perform unskilled jobs, any error in failing to include mild mental limitations in the RFC is harmless.

CONCLUSION

IT IS HEREBY ORDERED that the Clerk of Court shall assign a district judge to this action.

For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 8) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 12) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

////

////

////

////

11

within the specified time may waive the right to appeal the District Court's order. <u>Martinez v.</u> <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 22, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/alva0086.ssi.ckd.cjra